IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL JOSEPH BURBACH, JR., | Civil Action |
| Plaintiff, | No. 2:20-cv-723 |
| v. | |
| ARCONIC CORPORATION, successor in interest to Arconic Inc.; and HOWMET AEROSPACE INC, f/n/a Arconic Inc., | |
| Defendants. | JURY TRIAL DEMANDED |

## CIVIL COMPLAINT

Plaintiff, Daniel Burbach, by undersigned counsel, and pursuant to Fed. R. Civ. P. 8, files this Civil Complaint and in support alleges the following:

### I. Jurisdiction

1. The jurisdiction of the Court invoked pursuant to 29 U.S.C. §2617(a)(2), and 28 U.S.C. §§1331 and 1343(a)(4).

### II. Parties

2. Plaintiff Daniel Burbach is an adult individual who resides at 392 Central Park West, Apartment 15B, New York, NY 10025. At all relevant times, Burbach was employed by Defendants Howmet Aerospace Inc., f/n/a Arconic Inc. and/or Arconic Corporation. as Assistant General Counsel, Corporate & Securities, or Counsel, Governance and Securities.

3. Burbach worked for Defendants for more than one year, and worked more than 1,250 hours in the twelve months prior to April 3, 2020. Therefore, Burbach is an eligible employee as defined by the FMLA, 29 U.S.C. § 2611(2)(A).

4.       Defendant Arconic Corporation is a corporation registered to do business in Pennsylvania and its principal place of business is 201 Isabella Street, Pittsburgh, PA 15212. Arconic Corporation is an employer and/or joint employer of Burbach, and is a successor in interest of Arconic Inc., within the meaning of 29 U.S.C. §2611(4)(A)(ii)(II), and 29 C.F.R. §825.107(c).. It also engages in an industry or activity affecting commerce and employs more than 50 employees.

5.       Defendant Howmet Aerospace Inc., f/k/a Arconic Inc., is a corporation registered to do business in Pennsylvania and its principal place of business is 201 Isabella Street, Pittsburgh, PA 15212. At all times relevant it was the joint employer of Burbach, and is the predecessor of Arconic Corporation. It is engaged in an industry or activity affecting commerce and employs more than 50 employees.

### III. Factual Background

6.       Burbach is an attorney licensed to practice law in the State of New York and the Commonwealth of Massachusetts.

7.       From September 2016 through March 31, 2020, Burbach worked for Arconic Inc., or its successors. His final position was Assistant General Counsel, Corporate and Securities effective April 1, 2020.

8.       On April 1, 2020, Arconic Inc. split into two companies: Howmet Aerospace, Inc., f/n/a Arconic Inc. and a spinoff company, Arconic Corporation.

9.       On April 1, 2020, Burbach became employed by the Spinoff Company, Arconic Corporation as Assistant General Counsel, Corporate and Securities.

10.      Arconic Corporation is Burbach's joint employer with Howmet Aerospace, Inc., f/n/a Arconic Inc.

11. Throughout his employment with Arconic Inc., and/or Arconic Corporation, Burbach's employer highly rated his performance.

12. In 2019, Arconic Inc. announced its intention to split into two companies: Howmet Aerospace and Arconic Corporation. The separation was targeted for April 1, 2020.

13. Arconic Corporation offered Burbach a promotion to serve as Chief Securities and Governance Counsel at Arconic Corporation, effective as of the separation.

14. During February 2020, Diana Toman, was hired by Arconic Inc. and was designated to be Executive Vice President and Chief Legal Officer of Arconic Corporation, effective April 1, 2020, the day of the spinoff.

15. Thus, from February 2020 until April 1 Burbach worked for both Arconic Inc., (supervised by Margaret Lam, Chief Securities & Government Counsel of Arconic Inc. and Kate Ramundo, Chief Legal Officer, Arconic Inc., assigned to handle legal and business matters in preparation for the planned separation), and at the same time he worked for the spinoff company, Arconic Corporation, (supervised by Ms. Toman and handled post-separation Spinoff Company matters).

16. Burbach during this period worked in Arconic Inc.'s New York office.

17. Arconic Inc., and/or Arconic Corporation had slated Burbach to relocate to its Pittsburgh, Pennsylvania headquarters as soon as the current coronavirus pandemic effects subsided.

18. On or about March 13, 2020, Arconic Inc. closed its New York office due to the COVID-19 pandemic, and then a few days later closed its Pittsburgh, Pennsylvania headquarters.

19. On or about March 13, 2020, all Arconic Inc. and/or Arconic Corporation employees were ordered to work remotely for the remainder of the crisis.

20. On or about that day, Burbach developed a mild sore throat.

21. Despite this sore throat Burbach continued to work remotely each day until the early morning hours of the next day (2-3am), and became exhausted as a result.

22. Because of concerns for his health and health of his spouse and children, Burbach relocated his family to a relative's vacant apartment in Miami, Florida for a period of time, believing he and his family were less likely to contract the coronavirus in Miami, which at that time was not a COVID-19 hot spot.

23. Burbach alerted his supervisors at Arconic Inc./Arconic Corporation, of his intentions and also that he would be off work and off-line for large chunks of March 18 and March 19 while he and his family drove to Florida.

24. Both Ms. Lam, and Ms. Toman informed Burbach that they approved his request for the two days off, and told him they were concerned with "safety first."

25. Although approved to be away from work, Burbach attended to work emails while his spouse drove, and he also logged in and worked remotely at night throughout the next two days.

26. During this period, Burbach continued to feel sick.

27. On or about March 20, 2020, Burbach's health began to deteriorate rapidly.

28. By midday of March 20, he developed a 102 fever, was completely exhausted and experienced great difficulty breathing.

29. Despite these symptoms, Burbach completed as much work as possible and at approximately 5pm, sought treatment at a Miami hospital Emergency Room.

30. Based on CT scans; a lung X-ray; and his symptoms, the Emergency Room physicians diagnosed Burbach with COVID-19 caused by coronavirus.

31. Following several hours of observation the physicians placed Burbach on bed rest, and recommended he avoid stress until his breathing issues subsided.

32. On or about March 20, 2020, Burbach notified Kate Ramundo, Margaret Lam, and Diana Toman of his diagnosis and that his physicians recommended rest to recover from his serious health condition.

33. On or about March 23, 2020, Burbach notified Margaret Lam and Diana Toman that his illness had worsened and he requested time away from work to recover from his serious health condition.

34. Burbach's inability to work full time caused challenges to his employer. His group was thinly staffed and severely overworked due to the upcoming separation of Arconic Inc. and Arconic Corporation, and was not staffed to handle the loss of one team member.

35. Deadlines were missed, and Ms. Toman claimed it was difficult to keep up with all the last minute separation-related tasks.

36. On or about March 27, 2020, Burbach's breathing difficulties and other symptoms subsided somewhat and his physicians informed him that he would be cleared to leave quarantine if he remained symptom free for another 72 hours.

37. During the period from March 20, 2020 through and including March 31, 2020, Burbach suffered from a serious health condition that involved continuing treatment by a health care provider, within the meaning of 29 U.S.C. §2611(11)(B).

38. Burbach's COVID-19 likewise is an impairment and a disability within the meaning of the Americans with Disabilities Act because in its active state it substantially limits Burbach in the major life activity of breathing, and lung function. 42 U.S.C.§§12102(4)(D) & (E)(1); and

12102(2)(B).

39.     From on or about March 28 through March 30, Burbach returned to working (remotely) full time to catch up with work missed during his leave caused by his serious health condition.

40.     During this period, Burbach and his family learned that they would no longer be able to stay at the Miami apartment.

41.     On or about March 30-31, Burbach's physicians in Miami advised that he not return to living in New York City for the next few months because of the prevalence of coronavirus contraction; the lack of available health care facilities, and the chance of reinfection.

42.     To avoid the effects of his serious health condition and the lack of health care facilities in the New York City area, Burbach and his family decided to move to his spouse's family home in Slovenia for the remainder of the period when he was required to work remotely.

43.     In Slovenia Burbach would have access to full time child care; strong wi-fi; a quiet office, and more health care facilities if needed to treat his continuing serious health condition.

44.     On or about March 31, 2020, Burbach notified Ms. Toman of his intention, and requested as an accommodation for his impairment COVID-19, coronavirus, that he be permitted to work remotely from Slovenia.

45.     He assured her that he would structure his work day to remain on Eastern Standard Time; and would be able to devote all of his time to the Company.

46.     He informed Ms. Toman he would be offline for parts of April 1, and 2 and then fly to Slovenia the evening of April 3. Thus, by April 4, Saturday morning, Burbach would be back online and ready to work.

47. Ms. Toman informed Burbach that she was a "team player;" that she understood, and that "we will all get through this."

48. Ms. Toman approved Burbach's requested accommodation, and approved his request for short term leave of 2-3 days to recover from his serious health condition and travel to Slovenia.

49. On April 1, 2020, Arconic Inc., and Arconic Corporation, separated.

50. During the period from April 1 through April 2, Burbach and his family drove back to New York City.

51. During the drive, Burbach joined meetings, made telephone calls, and attended to work, and worked each night well past midnight.

52. On April 3, 2020, Ms. Toman phoned Burbach at 11 a.m. and told him that she changed her mind; that the Company could not accommodate him temporarily (and remotely) working in Europe, even through all corporate employees were working remotely due to the coronavirus quarantine, and were to continue to work remotely well into May 2020.

53. At the same time, Ms. Toman was working remotely from her home in Kansas City, MO, although Arconic Corporation's home office was in Pittsburgh, Pennsylvania, as indicated on her stationary.

54. At the time, Burbach's job required only: (1) a working computer; (2) a printer/scanner and (3) strong wi-fi connection.

55. Burbach informed Ms. Toman that he believed the Company's refusal to accommodate him was because he was impaired by COVID-19, during a difficult time for the Company and that because of his impairment he was not able to devote his usual time to work.

56. In an email of April 3, Ms. Toman informed Burbach that she was upset because she

had to do extra work while Burbach was recovering from COVID-19, and also upset that Burbach would suggest he was being disciplined because of his illness.

57. Specifically, Ms. Toman, Arconic Corporation's Executive Vice President and Chief Legal Officer wrote:

> It is very disappointing to me that you think this action is in any way related to your illness, as I made every effort to support you during this time. The only item requested was a to do list, which I did not receive for two weeks and ultimately, had to piece together with vendors to ensure you were able to recover.

58. Shortly after writing the above email, Ms. Toman fired Burbach because, she wrote, the company could not accommodate Burbach's request to temporarily work remotely outside of the continental United States.

59. Burbach was fully capable of working remotely from anywhere in the world, and indeed had worked remotely in this manner on every vacation he had ever taken with Defendants.

60. Ms. Toman's expressed reason for firing Burbach was a pretext for retaliation for requesting and taking leave under the Family Medical Leave Act, and in retaliation for requesting a reasonable accommodation for his impairment.

**Count I**
**Family and Medical Leave Act**
**29 U.S.C. §2615(a)(1)**
**Interference with FMLA Rights**

61. Plaintiff incorporates by reference the allegations in paragraphs 1 through 60 as if fully restated herein.

62. Defendants interfered with, restrained, and denied Burbach the exercise of his rights to FMLA leave by firing him on April 3, 2020 because of his FMLA protected absences in violation

8

of 29 U.S.C. §2615(a)(1).

63.     As a direct and proximate result of Defendant's violations of the FMLA, Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost wages, benefits and seniority.

WHEREFORE, Plaintiff hereby requests judgment, pursuant to 29 U.S.C. §2617(a), and the following legal and equitable remedies:

  a. Defendants be ordered to employ and re-employ Plaintiff in the position from which he was discharged, together with all benefits incident thereto, including but not limited to, wages, benefits, training, and seniority;

  b. Defendants be required to compensate Plaintiff for full value of wages and benefits that Plaintiff would have received had it not been for Defendants' illegal treatment of Plaintiff, with interest at the prevailing rate thereon until the date Plaintiff is offered re-employment in a position substantially equivalent to the one Plaintiff occupied prior to April 3, 2020;

  c. Defendants be required to provide Plaintiff all other compensation, including but not limited to lost restricted stock units, bonuses, 401 k and profit sharing, which was denied or lost to Plaintiff as a result of Defendants illegal treatment of Plaintiff;

  d. That a final judgment in favor of Plaintiff and against Defendants be entered for Plaintiff for liquidated damages, as provided by 29 U.S.C.§2617(a)(1)(A)(iii), in an amount equal to the wages, benefits, and other compensation denied or lost to Plaintiff;

  e. That Defendant be enjoined from discriminating against Plaintiff in any manner that violates the FMLA;

  f. That Plaintiff be awarded against Defendant the costs and expenses of this litigation and a reasonable attorney's fee; and

  g. That Plaintiff be granted such further legal and equitable relief as the Court may deem just and proper.

## Count II
## Family and Medical Leave Act
## 29 U.S.C. §2615(a)(2)
### Retaliation

64. Plaintiff incorporates by reference the allegations in paragraphs 1 through 63 as if fully restated herein.

65. Defendants discharged Plaintiff because he took FMLA eligible leave in violation of 29 U.S.C. §2615(a)(2).

66. Defendants retaliated against Plaintiff because he took leave protected by the FMLA, in violation of 29 U.S.C. §2615(a)(2).

67. As a direct and proximate result of Defendant's violations of the FMLA, Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost wages, benefits and seniority.

WHEREFORE, Plaintiff hereby requests judgment, pursuant to 29 U.S.C. §2617(a), and the following legal and equitable remedies:

  a. Defendants be ordered to employ and re-employ Plaintiff in the position from which he was discharged, together with all benefits incident thereto, including but not limited to, wages, benefits, training, and seniority;

  b. Defendants be required to compensate Plaintiff for full value of wages and benefits that Plaintiff would have received had it not been for Defendants' illegal treatment of Plaintiff, with interest at the prevailing rate thereon until the date Plaintiff is offered re-employment in a position substantially equivalent to the one Plaintiff occupied prior to April 3, 2020;

  c. Defendants be required to provide Plaintiff all other compensation, including but not limited to lost restricted stock units, , bonuses, 401 k and profit sharing, which was denied or lost to Plaintiff as a result of Defendants illegal treatment of Plaintiff;

  d. That a final judgment in favor of Plaintiff and against Defendants be entere

        for Plaintiff for liquidated damages, as provided by 29 U.S.C.§2617(a)(1)(A)(iii), in an amount equal to the wages, benefits, and other compensation denied or lost to Plaintiff;

e.     That Defendants be enjoined from retaliating against Plaintiff in any manner that violates the FMLA;

f.     That Plaintiff be awarded against Defendants the costs and expenses of this litigation and a reasonable attorney's fee; and

g.     That Plaintiff be granted such further legal and equitable relief as the Court may deem just and proper.

        Respectfully submitted,

        **Rothman Gordon, P.C.**

        /S/ Samuel J. Cordes
        Samuel J. Cordes

        Pa.I.D. #54874

        310 Grant Street
        Third Floor, Grant Building
        Pittsburgh, PA 15219
        412-338-1100