IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| DANIEL JOSEPH BURBACH JR., | ) | |
| | ) | |
| Plaintiff, | ) | 2:20-CV-00723-CRE |
| | ) | |
| vs. | ) | |
| | ) | |
| ARCONIC CORPORATION,  HOWMET | ) | |
| AEROSPACE INC, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |

## MEMORANDUM OPINION[1]

CYNTHIA REED EDDY, Chief United States Magistrate Judge.

### I.  INTRODUCTION

This civil action was initiated by Plaintiff Daniel Joseph Burbach, Jr. ("Plaintiff"), a former employee of Defendants Arconic Corporation and Howmet Aerospace, Inc. (collectively "Defendants") alleging violations of the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA") and the Americans with Disability Act, 42 U.S.C. §2000e, *et seq.* ("ADA").  This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

Presently for consideration is Defendants' motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 28).

For the reasons that follow, Defendants' motion to dismiss is denied.

### II.  BACKGROUND

Plaintiff is a licensed attorney and was employed by Arconic, Inc. from September 2016

---

[1]     All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq*.

through March 31, 2020.  Arconic split into two companies on April 1, 2020 – Howmet Aerospace, Inc. f/k/a Arconic Inc. and a spinoff company, Arconic Corporation.  Plaintiff became employed by the spinoff company, Arconic Corporation as Assistant General Counsel.  Plaintiff alleges that Arconic Corporation is his joint employer with Howmet Aerospace, Inc.   Plaintiff received high performance ratings and was offered a promotion upon the company separation.  During February 2020, Diana Toman was hired by Arconic Inc. as the Executive Vice President and Chief Legal Officer of Arconic Corporation effective April 1, 2020, the day of the spinoff.  From February 2020 until April 1, 2020, Plaintiff worked for both Arconic Corporation and Howmet.  Defendants slated Plaintiff to relocate to its Pittsburgh, Pennsylvania headquarters as soon as the COVID-19 pandemic effects subsided.

On March 13, 2020, Arconic Inc. closed its New York City office due to the COVID-19 pandemic and a few days later closed its Pittsburgh, Pennsylvania headquarters and directed all employees to work remotely for the remainder of the crisis.  On that same day, Plaintiff developed a mild sore throat.  Despite being unwell, Plaintiff continued to work remotely each day until the early hours of the next day and became exhausted.  Because of his concerns for his health and the health of his spouse and children, Plaintiff relocated his family to a relative's vacant apartment in Miami, Florida.  Plaintiff alerted his supervisors that he was temporarily relocating and that he would be off from work and offline for large portions of March 18, 2020 and March 19, 2020 while he and his family drove to Florida.  Plaintiff alleges that his supervisors, including Ms. Toman, approved his request for two days off and told him they were concerned with "safety first."  Despite having his time-off request approved, Plaintiff attended to work emails while his spouse drove and logged in and worked remotely at night throughout the next two days.

During this time, Plaintiff continued to feel sick and by March 20, 2020, his health began

to deteriorate rapidly.  By mid-day, he developed a 102-degree fever, was completely exhausted and experienced great difficulty breathing.  Despite these symptoms, Plaintiff completed as much work as possible and at approximately 5:00 p.m. sought treatment at a Miami hospital Emergency Room where he was diagnosed with COVID-19 caused by the coronavirus.  The Emergency Room physician placed Plaintiff on bed rest and recommended that he avoid stress until his breathing issues subsided.

Later that day, Plaintiff notified his supervisors Kate Ramundo, Margaret Lam and Diana Toman of his diagnosis and the physician's recommendation to rest and avoid stress until his breathing issues subsided.  On March 23, 2020, Plaintiff notified Ms. Lam and Ms. Toman that his illness had worsened, and he requested time away from work to recover.  Plaintiff alleges that despite his request, he was not notified of his FMLA rights, obligations, or eligibility to take FMLA leave.  Plaintiff's inability to work full time caused challenges to Defendants because his group was thinly staffed and severely overworked due to the upcoming spinoff.  Ms. Toman claimed it was difficult to keep up with the last-minute separation-related tasks and blamed this on among other things Plaintiff's need to recover from COVID-19.  On or about March 27, 2020, Plaintiff's breathing difficulties and other symptoms subsided somewhat, and his physician informed him that he would be cleared to leave quarantine if he remained symptom free for another 72 hours.

Plaintiff alleges that despite suffering from a serious health condition between March 20, 2020 and April 3, 2020, he was required to perform work while on medical leave.  He alleges that Ms. Toman text-messaged, emailed and telephoned Plaintiff frequently and often to question him about work related matters and required him to prepare documents via BoardVantage, an online portal used by Defendants' Board of Directors.  During this time, Plaintiff was designated as the point person on Defendants' S-8 registration statements that were filed March 30 and April 1,

2020.   Between March 28 and March 30, 2020, Ms. Toman required Plaintiff to work remotely full time to catch up with work missed during the time he was still on medical leave.   During this same time, Plaintiff learned that he and his family would not be able to stay at the Miami apartment and on or about March 30-31, 2020, Plaintiff's physicians in Miami advised that he not return to living in New York City for the next few months because of the prevalence of coronavirus contraction, the lack of available health care facilities and the chance of reinfection.   Plaintiff decided to move his family to his spouse's home in Slovenia for the remainder of the period he was required to work remotely.   He informed Ms. Toman of his intention and requested as an accommodation for his health condition that he be permitted to work remotely from Slovenia.   His request was approved, including Plaintiff's request for short term leave of 2-3 days to recover from COVID-19 and travel to Slovenia.

On April 1, 2020, Arconic Inc. and Arconic Corporation separated.   During the period from April 1 through April 2, Plaintiff and his family drove back to New York City and during the drive, Plaintiff joined meetings, made telephone calls, attended to work and worked each night well past midnight.   On April 3, 2020, Ms. Toman telephoned Plaintiff at 11:00 a.m. and informed him that she changed her mind and that the company could not accommodate him working from Europe even though all corporate employees were directed to work from home into May 2020.   Plaintiff informed Ms. Toman that he believed that the company's refusal to accommodate him was because he was impaired by COVID-19 during a difficult time for the company and that because of his impairment he was not able to devote his usual time to work.   Ms. Toman responded that she made every effort to support Plaintiff during his illness and that she only requested that Plaintiff create a list during his leave which she received from Plaintiff two weeks late.   Shortly thereafter, Ms. Toman fired Plaintiff because the company could not accommodate his request to temporarily

work remotely outside of the continental United States.  Plaintiff claims that his firing was pretext for retaliation for requesting and taking leave under the FMLA and in retaliation for requesting a reasonable accommodation for his impairment.

Plaintiff asserts the following claims against Defendants: (1) interference with his FMLA rights for requiring him to perform work while on medical leave and not notifying Plaintiff of his eligibility to take FMLA leave (Count I); FMLA retaliation for terminating Plaintiff's employment for taking FMLA-eligible leave (Count II); failure to accommodate in violation of the ADA for failing to allow Plaintiff to work from Slovenia (Count III); discrimination in violation of the ADA for firing Plaintiff for requesting an accommodation to work from Slovenia (Count IV); and retaliation in violation of the ADA for firing Plaintiff due to contracting COVID-19 and requesting a reasonable accommodation (Count V[2]).

Defendants now move to dismiss all claims against them.

### III.    STANDARD OF REVIEW

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well settled. Under Federal Rule of Civil Procedure 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  A complaint

---

[2]      Plaintiff refers to this Count as Count IV in his complaint, however the court will construe this claim as Count V.

that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). Yet the court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000), or the plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

Although a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion, a complaint must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 555. Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

The plausibility standard is not akin to a "probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

When considering a Rule 12(b)(6) motion, the court's role is limited to determining

whether a plaintiff is entitled to offer evidence in support of his claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974). The court does not consider whether a plaintiff will ultimately prevail. *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

As a general rule, if a court "consider[s] matters extraneous to the pleadings" on a motion for judgment on the pleadings, the motion must be converted into one for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). However, a court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents integral to or explicitly relied on in the complaint, even if they are not attached thereto, without converting the motion into one for summary judgment. *Mele v. Fed. Rsrv. Bank of New York*, 359 F.3d 251, 256 (3d Cir. 2004) n. 5 (3d Cir. 2004); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

### IV.   DISCUSSION

#### a.   *FMLA Interference (Count I)*

First, Defendants argue that Plaintiff's FMLA interference claim should be dismissed because he has not pleaded adequate facts suggesting he was denied benefits to which he was entitled under the FMLA and even if he had, he has not shown how he was prejudiced by such interference.

The FMLA gives eligible employees the right to take up to twelve weeks of leave per annum if they are suffering from a serious health condition that renders the employee unable to perform the functions of their job. 29 U.S.C. § 2612(a)(1)(D). It is unlawful for an employer to interfere with, restrain or deny an employee's exercise of or attempt to exercise their FMLA rights.

29 U.S.C. § 2615(a)(1). *See also Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 401 (3d Cir. 2007).

When an employee claims interference of FMLA rights by his employer, he must show that (1) he "was an eligible employee under the FMLA," (2) his "employer was subject to the FMLA's requirements," (3) he "was entitled to FMLA leave," (4) he "gave notice to [his] employer of her intention to take FMLA leave," and (5) he "was denied benefits to which [he] was entitled under the FMLA." *Soutner v. Penn State Health*, 841 F. App'x 409, 413 (3d Cir. 2021) (citing *Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014)). Where, as here, the employee claims that FMLA interference occurred based upon the employer's failure to inform him of his ability to take FMLA leave, the employee must show resulting prejudice. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 143 (3d Cir. 2004), *holding modified by Erdman v. Nationwide Ins. Co.*, 582 F.3d 500 (3d Cir. 2009). An employee is prejudiced when his employer's failure to advise makes him unable to exercise his FMLA rights in a "meaningful way, thereby causing injury." *Id*. at 143. In other words, if the employee alleges that had he known of his ability to take FMLA leave he would have structured his leave in a different way, he has shown prejudice. *Conoshenti*, 364 F.3d at 142–143; *Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, 323 (3d Cir. 2014).

While Defendants argue that Plaintiff has not "identif[ied] any FMLA benefits he was denied to which he was entitled, such as leave or reinstatement[,]" (ECF No. 29 at 8), Plaintiff's complaint is clear that he alleges he was entitled to up to twelve weeks of leave because he was suffering from COVID-19 which he alleges is a serious health condition that rendered him unable to perform the functions of his job. Further, while Defendants argue that Plaintiff was not "required to use accumulated paid leave to account for missed work during his illness and recovery," and was not denied FMLA leave, setting aside that these allegations are not contained

in the complaint, this argument does not illustrate that as a matter of law Plaintiff was not denied FMLA leave.  As alleged by Plaintiff, he informed his supervisors that he was ill with COVID-19 and sought medical leave to recover.  While Plaintiff was granted this request, he alleges he was not informed of his ability to take leave under the FMLA and thus denied FMLA leave.

As to Defendants' argument that Plaintiff has not shown prejudice, at this procedural juncture, it would be premature to determine as a matter of law that Plaintiff was prejudiced by Defendants' failure to inform him of his ability to take FMLA leave.  Plaintiff has met his burden at the motion to dismiss stage because he alleges that if he was informed he could take up to twelve weeks of leave that he would have taken all of that time to fully recover and not only a few days. The extent that Plaintiff was given actual notice of his right to take that leave and if not, whether he was actually prejudiced by the lack of notice are determinations better suited to be addressed with the benefit of a completed record.  Accordingly, Defendants' motion to dismiss Plaintiff's FMLA interference claim is denied.

### b.  FMLA Retaliation (Count II)

Defendants argue that Plaintiff's FMLA retaliation claim fails because he did not invoke his right to FMLA-qualifying leave because Plaintiff only sought "general" leave, he did not suffer an adverse employment action because he was not qualified for his position, and even if he engaged in protected activity, the adverse action was not causally related to Plaintiff's FMLA rights.

"To prevail on a retaliation claim under the FMLA, the plaintiff must prove that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301–02 (3d Cir. 2012) (citations omitted).

At this stage of litigation, Plaintiff has adequately alleged facts suggesting that he invoked

his right to FMLA leave.  He informed his supervisors that he was experiencing health issues such as shortness of breath, fever, and extreme exhaustion, was hospitalized and thereafter diagnosed with COVID-19.  He alleges that he sought leave to recover from COVID-19.  These facts are suggestive that Plaintiff invoked his right to FMLA leave as he provided notice to Defendants that he was suffering from a serious medical condition and sought time to recover. *See Lichtenstein*, 691 F.3d at 303 (employee invokes FMLA leave when they provide notice to their employer of their need to take medical leave).  Plaintiff has also adequately stated facts suggestive that he suffered an adverse employment action because he was terminated from his position. *See Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 257 (3d Cir. 2014) (adverse employment action is one that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him of employment opportunities, or adversely affects his status as an employee."). Lastly, Plaintiff has adequately alleged facts suggestive of causation through temporal proximity and antagonism, as he first sought medical leave on March 20, 2020, informed supervisors that his condition worsened on March 23, 2020 and requested time away from work to recover and was terminated from his position on April 3, 2020 within hours after his supervisor allegedly told Plaintiff of the inconvenience he caused to her when he was on leave.

The extent to which Plaintiff could perform his job, or whether he was terminated because he sought to relocate outside of the United States or any other reason are issues better decided with the benefit of a completed record at the appropriate procedural juncture.  Accordingly, Defendants' motion to dismiss Plaintiff's FMLA retaliation claim is denied.

### c.  *Disability Discrimination (Count IV)*

Next, Defendants argue that Plaintiff's disability discrimination claim should be dismissed. Defendants argue that Plaintiff's disability discrimination claim fails because Plaintiff was not

disabled under the ADA because his COVID-19 illness was a temporary and non-chronic impairment of short duration, he was not substantially limited in any major life activity when he was terminated because he was symptom-free and able to return to full-time work as of March 28, 2020, and was not qualified because no accommodation could have enabled Plaintiff to perform the essential functions of his job.  Each argument will be addressed separately.

"Congress enacted the ADA in 1990 in an effort to prevent otherwise qualified individuals from being discrimination against in employment based on a disability." *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 579 (3d Cir. 1998). "To establish a prima facie case of disability discrimination under the ADA, the employee must show that he (1) is a disabled person within the meaning of the ADA; (2) is qualified to perform the essential functions of his job, with or without reasonable accommodations, and (3) has been subjected to an adverse employment action as a result of discrimination." *Rubano v. Farrell Area Sch. Dist.*, 991 F. Supp. 2d 678, 699 (W.D. Pa. 2014). "The existence of a prima facie case of employment discrimination is a question of law that must be decided by the court but the prima facie test remains flexible and must be tailored to fit the specific context in which it is applied." *Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007).

A person is considered disabled under the ADA if he has "a physical or mental impairment that substantially limits one or more major life activities[,]" or is "regarded as having such an impairment." 42 U.S.C. § 12102(1)(A), (C).  Plaintiff alleges that he is both disabled and that he was regarded as disabled.

The ADA and the definition of "disabled" was amended by Congress effective January 1, 2009 and requires courts to broadly interpret what constitutes a disability "to the maximum extent permitted." *Ostrowski v. Con-Way Freight, Inc.*, 543 F. App'x 128, 131 (3d Cir. 2013) (quoting 42 U.S.C. § 12102(4)(A)).  Specific to Defendants' argument here that Plaintiff's alleged disability

was temporary and thus not protected under the ADA, Congress intentionally enacted the ADA Amendments Act ("ADAAA") in response to "Supreme Court decisions and EEOC regulations construing 'disability' to mean only 'permanent or long-term impairments.' " *Matthews v. Pennsylvania Dep't of Corr.*, 613 F. App'x 163, 167 (3d Cir. 2015).  While the Court of Appeals for the Third Circuit "has not yet interpreted the ADAAA's effect on short-term-disability-based claims[,]" *Matthews*, 613 F. App'x at 168, relying on the ADAAA regulations, it acknowledged that a duration of an impairment alone is not determinative of whether it constitutes a disability and constitutes only "one factor to consider," that a court must "perform an individualized assessment of the effect of the impairment" on the plaintiff's life and noted "[w]hether [the plaintiff] was in fact disabled is not a question we can answer on a motion to dismiss." *Id.* at 168–69. *See also Thomas v. Trustees of Univ. of Pennsylvania*, No. CV 17-5194, 2020 WL 374615, at *4 (E.D. Pa. Jan. 23, 2020).  Defendants' argument that Plaintiff is not disabled because his impairment was temporary is rejected.  Plaintiff has adequately alleged that he suffered from at least one physical impairment that substantially limited one or more major life activities by alleging he had trouble breathing and has thus pleaded he suffered from a disability.  The effect of this impairment on Plaintiff, "whether he was in fact disabled" and the duration of that disability is not properly resolved at the motion to dismiss stage. *Matthews*, 613 F. App'x at 169.

Defendants also argue that Plaintiff's claim that he was regarded as disabled fails because if an individual suffers from an impairment that is "transitory and minor . . . with an actual or expected duration of 6 months or less[,]" he cannot be considered "regarded as" disabled. 42 U.S.C.A. §§ 12102(1)(C); (3)(B).  Whether an impairment is "transitory and minor" is an affirmative defense to an ADA claim. 29 C.F.R. § 1630.15(f).  "[C]ourts rarely consider affirmative defenses on motions to dismiss" and do so only "when 'an unanswered affirmative

defense appears on its face.' " *Clean Air Council v. United States Steel Corp.*, 4 F.4th 204, 211 (3d Cir. 2021) (quoting *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005)).  At this stage, it is not apparent from the face of the complaint that Plaintiff's impairment was transitory and minor with an actual or perceived duration of six or fewer months.  Because at this stage the court is required to take all factual allegations as true and draw all reasonable inferences in Plaintiff's favor, it is reasonable to infer that Plaintiff's impairment in treating and recovering from COVID-19 could have lasted longer than six months.  Accordingly, Defendants' motion to dismiss in this respect is denied.

Defendants next argue that because Plaintiff was neither disabled nor regarded as disabled at the time he was terminated because he was "symptom-free and able to return full-time to work as of March 28." (ECF No. 29 at 18).  This is a mischaracterization of what Plaintiff alleges. Plaintiff alleges that on March 27, 2020, his symptoms subsided such that treating physicians would allow him to leave quarantine, that he continued to be treated by a physician for his symptoms up to and including the date he was terminated, and despite seeking medical leave, his supervisors continued to assign work tasks to him which he was required to complete.  Plaintiff has therefore adequately alleged facts suggesting that he was disabled and regarded as disabled at the time he was terminated on April 3, 2020.  Accordingly, Defendants' motion to dismiss is denied in this respect.

Lastly, Defendants argue that Plaintiff's ADA discrimination claim fails because he could not perform all essential functions of his position with or without accommodation.  They argue that no accommodation would have enabled Plaintiff to perform the essential functions of his position as he was a New York-licensed attorney who held a position based in the United States and his requested accommodation to relocate to Slovenia rendered him unable to perform the

essential functions of his job.

An employee is a "qualified individual" under the ADA if they satisfy "the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc,[,]" 29 C.F.R. § 1630, and are able to "perform the essential functions of the position held or desired, with or without reasonable accommodation." *Id.*

Contrary to Defendants' argument, Plaintiff alleges that he could have performed the essential functions of his position with the accommodation of recovering from COVID-19 in a location of his choosing.  This is all that is required at the motion to dismiss stage – whether Plaintiff in fact could have performed the essential functions of his job outside of the United States, whether his location outside of the United States had any effect on his license to practice law, or whether seeking to relocate to another country to recover is a reasonable accommodation are all issues better suited for determination upon a completed record.  Accordingly, Defendants' motion to dismiss Plaintiff's disability discrimination claim is denied.

### d.  Failure to Accommodate (Count III)

Next Defendants argue that Plaintiff's reasonable accommodation claim should be dismissed because he was not denied a reasonable accommodation because an international relocation to access family-provided childcare is not covered by the ADA.

"To establish an ADA failure-to-accommodate claim a plaintiff must show: (1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated." *Gardner v. SEPTA*, 410 F. Supp. 3d 723, 741 (E.D. Pa. 2019).

As to whether Plaintiff could have been reasonably accommodated, this requires an analysis of the facts surrounding Plaintiff's request and Defendants "reasonable efforts to assist

14

the employee and to communicate with the employee in good faith." *Mengine v. Runyon*, 114 F.3d 415, 416 (3d Cir. 1997)).  While Defendants' argument that relocation to Slovenia for childcare is not a reasonable accommodation is well-taken, the court cannot at this procedural juncture make a determination as a matter of law that Plaintiff could not have been reasonably accommodated, as this is an affirmative defense not capable of resolution without considering matters outside of the complaint like the hardships or burdens of granting such an accommodation would place on Defendants. *Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996).  Plaintiff need only "make a prima facie showing that reasonable accommodation is possible," *id.*, which Plaintiff here has done by alleging that his request to temporarily relocate to Slovenia was originally granted before being revoked, that all corporate employees were working remotely and he could perform his job in Slovenia.  Accordingly, Defendants' motion to dismiss Plaintiff's failure to accommodate claim under the ADA is denied.

### e.   ADA Retaliation (Count V)

Next, Defendants move to dismiss Plaintiff's ADA retaliation claim by arguing that Plaintiff's request to work remotely from Slovenia was not protected activity because it was based upon his childcare needs and not his disability.

"To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (citations omitted).  An employee who claims ADA retaliation for seeking an accommodation must show he requested that accommodation in good faith. *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3d Cir. 2003).  This requirement "means that the

protection from retaliation afforded under the ADA does not extend to an employee whose request is motivated by something other than a good faith belief that he/she needs an accommodation. Congress clearly did not intend to extend the reach of the ADA's umbrella to employees whose motivation for requesting an accommodation is something other than a good faith belief that an accommodation under the Act is necessary or appropriate." *Id.*

Here, Plaintiff has sufficiently pleaded facts suggesting he engaged in protected activity when he requested a temporary relocation to Slovenia, as his request was originally granted before it was revoked and alleges that he had safer access to health care there. While Defendants point out that Plaintiff has also pleaded he had better access to childcare by relocating to Slovenia, and the ADA does not protect employee's whose motivation for requesting an accommodation is something other than the belief that the accommodation is necessary and appropriate under the Act, Plaintiff's true motivations for requesting the temporary relocation are not appropriate to resolve at the motion to dismiss stage and may be revisited at the appropriate procedural juncture. Accordingly, Defendants' motion to dismiss Plaintiff's ADA retaliation claim is denied.

### f. *Claims against Howmet*

Lastly, Howmet argues that it was not Plaintiff's employer when he was terminated on April 3, 2020 although an employment relationship may have existed prior to April 1, 2020 and therefore argues all claims against it should be dismissed. It is premature to determine as a matter of law that Howmet was not Plaintiff's employer during operative times and no legal responsibility attaches for any of Plaintiff's claims against it. Plaintiff has pleaded that at operative times, he was both employed by Howmet and by Arconic Corporation. It is reasonable to infer that employment decisions related to Plaintiff's claims could have been decided by Howmet and/or Arconic Corporation employees and Plaintiff should be provided the opportunity to support his

claims against Howmet with evidence that it engaged in the violations he claims.  Accordingly, Defendants' motion to dismiss is denied in this respect.

### V.    CONCLUSION

Based on the foregoing, Defendants' motion to dismiss is denied.  An appropriate Order follows.

Dated: September 22, 2021                              By the Court,
                                                      s/ Cynthia Reed Eddy
                                                      Cynthia Reed Eddy
                                                      Chief United States Magistrate Judge